UNITED STATES of America, Appellee,

v.

Stanley FERRYMAN,
Defendant, Appellant.

No. 89–1486.

United States Court of Appeals,
First Circuit.

Heard Dec. 5, 1989.

Decided Feb. 21, 1990.

As Amended Feb. 23 and
March 16, 1990.

Rehearing Denied March 20, 1990.

John C. Doherty, Andover, Mass., for appellant.

Deborah C. Sharp, Asst. U.S. Atty., with whom Jeffrey R. Howard, U.S. Atty., Concord, N.H., was on brief, for U.S.

Before BOWNES, BREYER and SELYA, Circuit Judges.

SELYA, Circuit Judge.

This appeal, involving a question of statutory interpretation, would be a classic jigsaw puzzle but for one thing: a jigsaw puzzle invariably arrives in a box, the cover of which displays a clear picture of what will materialize when the pieces are properly assembled. This case is different because the question comes to us in a plain wrapper, as it were, bereft of previews of coming attractions. The lack of graphics proves in the end, however, to be of little moment; when one confronts the task of assembly, the statutory fragments are satisfactorily aligned and the picture which emerges is explicit and unambiguous. In short, the puzzle is considerably less problematic than appears at first blush.

## I. THE BACKDROP

Defendant-appellant Stanley Ferryman was indicted by a federal grand jury in New Hampshire. The indictment was in two counts, but our concern is exclusively with count 2. Therein, appellant was charged with possession of nine ounces of pure cocaine, more or less, with intent to distribute the same, in violation of 21 U.S.C. § 841(a). The offense occurred in September 1987. Ferryman pled guilty and was sentenced to a jail term plus a term of supervised release. He did not appeal.

On August 19, 1988, appellant moved to correct an illegal sentence. He argued, among other things, that supervised re-

lease was inexigible. On August 30, the district court, agreeing, vacated the supervised release term. Eventually, the court ruled that a special parole term, rather than a term of supervised release, was mandated in conjunction with the prison sentence levied on count 2. An amended judgment containing a three-year special parole term was issued. Ferryman appealed from the amended judgment.

## II. THE PIECES OF THE PUZZLE

It is against this backdrop that we turn to the relevant statutory fragments. Prior to 1984, 21 U.S.C. § 841(a) criminalized distribution (actual or intended) of drugs such as cocaine. The relevant penalty provision, 21 U.S.C. § 841(b), provided for fines and/or incarceration, and in addition, for imposition of a mandatory special parole term in conjunction with every prison sentence meted out in respect to cocaine charges. *See* Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, § 401(b), 84 Stat. 1236.

On October 12, 1984, section 841(b) was amended. *See* Comprehensive Crime Control Act of 1984 (CCCA), Pub.L. No. 98–473, § 502, 98 Stat. 1837. Among other things, the amendment subdivided cocaine-related offenses into two categories for purposes of punishment. A "new" section 841(b)(1)(A) applied to large-scale transactions (involving one kilogram or more of cocaine); the "old" prohibition was recast as section 841(b)(1)(B) and covered only smaller-scale transactions. These amendments became effective upon passage. The two halves of the subdivided statute parted company on the subject of special parole: the neoteric section 841(b)(1)(A) did not mention it, while section 841(b)(1)(B), as reformulated, retained an obligatory special parole provision. The net result was arguably anomalous:[1] large-scale cocaine traffickers could not be saddled with special parole, but lower-volume peddlers who were sentenced to prison received a mandatory term of special parole to boot. *See,*

*e.g., United States v. Rivera–Santiago,* 872 F.2d 1073, 1090 (1st Cir.) (describing result), *cert. denied,* —— U.S. ——, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989); *United States v. Santamaria,* 788 F.2d 824, 829 (1st Cir.1986) (same).

Another provision of the CCCA, section 224, prospectively deleted the mandatory special parole term from the recast section 841(b)(1)(B). Under section 235(a)(1) of the CCCA, this deletion was to occur as of November 1, 1986 (the effective date of the Sentencing Reform Act of 1984). But, the special parole language remained in place for a year longer, because the Sentencing Reform Act's effective date was later postponed to November 1, 1987. *See* Sentencing Reform Amendments Act of 1985, Pub.L. No. 99–217, § 4, 99 Stat. 1728.

The legislative pot was only just beginning to boil. Section 841(b) was amended again in 1986. These revisions were eventually enacted as Subtitle A of Title I of the Anti–Drug Abuse Act of 1986 (ADAA), Pub.L. No. 99–570, tit. I, §§ 1001–1009, 100 Stat. 3207, 3207–2 through 3207–8 (1986). As introduced in the House of Representatives on September 8, 1986, the bill reflected mounting congressional concern over drug trafficking. *See* 132 Cong.Rec. H6459 (daily ed. September 8, 1986); H6608–10, H6628–32 (daily ed. Sept. 11, 1986); *see generally* H.R.Rep. No. 845, 99th Cong., 2d Sess. 10–11 (1986). Thereunder, the proposed penalties for all categories of cocaine and other narcotics offenses included mandatory minimum terms of imprisonment, mandatory special parole terms, and ineligibility for regular parole during mandatory minimum terms of imprisonment. 132 Cong.Rec. H6629 (daily ed. Sept. 11, 1986). While no explicit effective date was fixed vis-a-vis the penalty provisions, it was plain that the enhanced penalties, including the special parole provisions, were to be effective from the date of enactment; special parole would then be eliminated entirely on the effective date of

---

**1.** It can be maintained either that Congress "slipped a cog," *United States v. Sanchez,* 687 F.Supp. 1254, 1256 (N.D.Ill.1988); or that, because larger transactions carried potentially

longer time served, special parole was more appropriate for smaller-scale infractions. *Id.* at 1256 n. 6.

sentencing reform (November 1, 1987). *See, e.g.,* H.Rep. No. 845, 99th Cong., 2d Sess. 20 (1986) (describing bill as containing "conforming prospective amendments to repeal the provisions authorizing special parole terms when the new Federal sentencing laws take effect"). This version of H.R. 5484 was passed by the House on September 11, 1986. 132 Cong.Rec. H6608 (daily ed. Sept. 11, 1986).

Within the next few days, the President transmitted to Congress a somewhat different schemata (labelled the Drug–Free America Act), also enhancing penalties for drug offenses. *See* 22 Comp.Pres.Doc. 1192–1194 (Sept. 15, 1986). Each subsection applicable to serious offenses provided for mandatory minimum terms of imprisonment, no possibility of regular parole, and mandatory terms of special parole. Section 507 of the Administration's proposal stipulated that, upon the effective date of sentencing reform (November 1, 1987), "special parole term[s]" would be supplanted by "term[s] of supervised release." While no effective date for the amended penalty provisions was specified, the explanatory notes accompanying the proposal left no doubt but that special parole terms (and the other penalty enhancements) were to go into effect immediately upon enactment, and there was to be a changeover from "special parole" to "supervised release" on November 1, 1987. The Administration's proposal (with revisions not material for our purposes) was introduced in the Senate as S. 2878. 132 Cong.Rec. S13648–52 (daily ed. Sept. 25, 1986). The Senate bill retained the requirement for terms of special parole and for a changeover from special parole to supervised release on November 1, 1987.

S. 2878 became the Senate substitute for the version of H.R. 5484 theretofore passed by the House, *see* 132 Cong.Rec. S13779 (daily ed. Sept. 26, 1986); and H.R. 5484, as thus amended, was passed by the Senate on September 30 and returned to the House. 132 Cong.Rec. S14302 (daily ed.

Sept. 30, 1986). The House concurred and remitted the bill to the Senate with other amendments not relevant today. 132 Cong.Rec. H9479–84 (daily ed. Oct. 8, 1986). The penalty provisions mandating special parole terms were contained in section 1002 of the bill and the terminology changeover provision (exchanging "special parole" for "supervised release" effective November 1, 1987) was contained in section 1004. On October 15, the Senate passed the bill as received from the House, adding certain other amendments. 132 Cong.Rec S16489, 16502 (daily ed. Oct. 15, 1986).

A final rush to passage ensued. When the bill was again before the House, the words "special parole" were for the first time changed to "supervised release" in the penalty provisions of the bill, without any notation or explanation;[2] yet the terminology changeover language of section 1004 was unaltered. 132 Cong.Rec. H11219–22 (daily ed. Oct. 17, 1986). Both the House and the Senate, without any discussion of this point, approved the bill, 132 Cong.Rec. H10777, 10787, S16915, 16921 (daily ed. Oct. 17, 1986), and the President signed the ADAA into law on October 27, 1986.

We survey the battlefield. Section 1002 of the law, as enacted, increased the penalties for drug offenses, refigured the quantities of controlled substances necessary to trigger different penalty levels, prohibited parole for various offenders, substituted "supervised release" for "special parole" in section 841(b)(1)(B), and added a mandatory supervised release term in respect to sentences imposed under section 841(b)(1)(A). Section 1004 contained a further instruction anent the supervised release/special parole interchange—an instruction which was both more specific and more inclusive:

The Controlled Substances Act and the Controlled Substances Import and Export Act are amended by striking out "special parole term" each place it ap-

---

2. Up to this point in the process, the language proposed by the Administration, passed by the Senate, and concurred in by the House (and by the Senate for a second time) provided for "special parole" in the amendments made to 21

U.S.C. § 841(b), and included a provision to strike references to "special parole" and insert "supervised release," effective November 1, 1987.

pears and inserting "term of supervised release" in lieu thereof.

ADAA § 1004(a), Pub.L. No. 99–570, 100 Stat. 3207–6. And although section 1002 contained no stipulation delaying its effective date, section 1004 was more precise; it would "take effect on the date of the taking effect of section 3583 of Title 18, United States Code." *Id.* § 1004(b). It is beyond peradventure that 18 U.S.C. § 3583 (a key provision of the Sentencing Reform Act) went into effect on November 1, 1987 and applied to offenses committed after that date. It is equally certain that, absent the light shed by section 3583, "supervised release" was not anchored to any set format.[3] Ferryman's case, then, fell squarely within what we shall call the "hiatus period," that is, his crime was committed during the interval between the date ADAA in general (including most, if not all, of § 1002) was effective (October 27, 1986) and the date ADAA § 1004 became effective (November 1, 1987).

Appellant's complaint is forthright. Relying on ADAA § 1002, he says that the district court erred in imposing a special parole term because, by September 1987, Congress had removed special parole from the penalty provisions of the statute of conviction. In the interest of precision, we put the salient question as follows: Where a defendant, during the hiatus period, committed a drug trafficking offense involving less than one kilogram of cocaine, must the sentencing judge, coincident to any prison term, impose a special parole term as designated by the version of 21 U.S.C. § 841(b)(1)(B) enacted in 1984 and in effect prior to the 1986 ADAA amendments?

## III. SOLVING THE PUZZLE

Prior to October 1986, section 841(b)(1)(B) mandated the imposition of a special parole term in a case like this one. The ADAA, as we have shown, modified the statute's penalty provision to abolish special parole and substitute supervised release. Yet, the concept of supervised release, as Ferryman accurately pointed out in his initial motion to correct his sentence, did not take final shape until November 1, 1987 (when 18 U.S.C. § 3583 became law). Appellant argues, in effect, that for offenses committed during the hiatus period, which would have been within section 841(b)(1)(B) (Supp. II 1984) prior to October 27, 1986, neither special parole nor supervised release was imposable. We are unpersuaded.

In the first place, there is nothing to commend reading *both* special parole and supervised release out of the statutory scheme. It seems perfectly clear that Congress, notwithstanding its somewhat inartful scrivening, intended that those who violated section 841(b)(1)(B) (Supp. II 1984) remain subject throughout to some form of post-confinement monitoring. Appellant has been unable to suggest any good reason for implying the existence of a monitoring gap during the hiatus period—and we are aware of none. The real question in the section 841(b)(1)(B) milieu is not whether Congress opted for post-confinement monitoring during the hiatus period, but what modality it intended the courts to employ to accomplish such monitoring.

■■■ Because ADAA section 1002 contained no specified effective date, the amendments embodied therein have, in general, been held effective from and after the date of enactment (October 27, 1986). *See, e.g., United States v. Padilla,* 869 F.2d 372, 381–82 (8th Cir.) (increased penalties applicable to offense committed in March 1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 3223, 106 L.Ed.2d 572 (1989); *United States v. Posner,* 865 F.2d 654, 660 (5th Cir.1989) ("no parole" provision of ADAA applies to February 1987 offense); *see also United States v. Levario,* 877 F.2d 1483, 1487 (10th Cir.1989); *United States v. Meyers,* 847 F.2d 1408, 1414–16 & n. 2 (9th Cir.1988); *United States v. Smith,* 840

---

**3.** 18 U.S.C. § 3583 authorized a federal court *inter alia* to include a term of supervised release as part of a sentence, noted factors to be considered in determining whether to impose supervised release, mandated its inclusion in certain circumstances, specified the appropriate length of supervised release terms for sundry classes of felonies, listed conditions for supervised release, and authorized modification and/or revocation of supervised release terms.

F.2d 886, 889–90 (11th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 154, 102 L.Ed.2d 125 (1988). This is in accord with the presumption that statutes become effective at the moment they are signed into law. *See, e.g., United States v. Robles–Pantoja,* 887 F.2d 1250, 1257 (5th Cir.1989); *Levario,* 877 F.2d at 1487; *Meyers,* 847 F.2d at 1415. But, that rule of thumb is merely an aid to ascertaining legislative intent. Ultimately, "absent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction." *Johnson v. First Nat'l Bank,* 719 F.2d 270, 277 (8th Cir.1983). The "effective forthwith" principle does not displace general statutory construction rules, which remain applicable to questions surrounding the time when a statute is to go into effect. *See, e.g., United States v. Shaffer,* 789 F.2d 682, 686 (9th Cir.1986) (where no date is prescribed for implementation of statute, issue must be resolved under usual tenets of statutory construction); *see also United States v. Affleck,* 765 F.2d 944, 948 (10th Cir.1985) *(in absence of congressional intent to the contrary,* law takes effect on date of enactment). One such tenet, of course, is that statutes must always be interpreted with a view toward avoiding absurd results and resolving internal inconsistencies. *See United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981); *Hernandez–Colon v. Secretary of Labor,* 835 F.2d 958, 960 (1st Cir.1988); *see also Preterm, Inc. v. Dukakis,* 591 F.2d 121, 128 (1st Cir.1979) (when plain meaning of statute produces a result at variance with the policy of the legislation as a whole and an aid to the construction of the meaning is available, there is no rule of law which forbids its use, however

clear the words may appear on superficial examination).

■ In an instance where, as here, section 1004 (which expressly delays the interchange of "supervised release" for "special parole") is in apparent conflict with the "effective forthwith" presumption that animates other aspects of section 1002, the usual canons of construction also require that we prefer the specific over the general, what is express over what might otherwise be implied. *See Busic v. United States,* 446 U.S. 398, 406, 100 S.Ct. 1747, 1752–53, 64 L.Ed.2d 381 (1980); *Morton v. Mancari,* 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1974); *United States v. Saade,* 652 F.2d 1126, 1132 (1st Cir.1981). Given the close similarity between the two types of post-confinement monitoring, *see infra,* and the fact that standards for the imposition of supervised release were not solidly in place until November 1, 1987 (when 18 U.S.C. § 3583 became effective), we believe it best effectuates Congress' discernible intent, where supervised release is not an innovation but merely a replacement for special parole, to read the statutory interplay as implementing a simultaneous one-time swap of one for the other. In such a circumstance, we agree with the Fifth Circuit that "tying the effective date of the change to the effective date of the implementing statute would seem the more logical arrangement." *United States v. Byrd,* 837 F.2d 179, 181 n. 8 (5th Cir.1988).

We hold that, with respect to cocaine distribution offenses committed during the hiatus period and falling within the ambit of the 1984 version of 21 U.S.C. § 841(b)(1)(B), ADAA § 1004 sufficed to delay the effective date of supervised release and thereby preserved the preexisting special parole requirements.[4] *Accord*

---

4. We expressly restrict our holding to drug distribution offenses committed during the hiatus period which were indictable under 21 U.S.C. § 841(b)(1)(B). An offense committed in that same time frame which came within section 841(b)(1)(A) would likely be a horse of another color inasmuch as preexisting law did not authorize special parole terms for such offenses. *See, e.g., United States v. De Los Reyes,* 842 F.2d 755, 758 n. 3 (5th Cir.1988) (leaving question open); *United States v. Robinson,* 697 F.Supp.

1506, 1507 (D.Minn.1988) (same). The circuits are split on the question in the section 841(b)(1)(A) context. *Compare, e.g., United States v. Levario,* 877 F.2d at 1489 (indicating that special parole term should apply to section 841(b)(1)(A) offense) and *United States v. Whitehead,* 849 F.2d 849, 859–60 (4th Cir.) (similar), *cert. denied,* —— U.S. ——, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988) *with United States v. Torres,* 880 F.2d 113, 114–15 (9th Cir.1989) (per curiam)

*United States v. Robles–Pantoja,* 887 F.2d at 1257–61; *United States v. Posner,* 865 F.2d at 657–60; *United States v. Smith,* 840 F.2d at 889–90; *United States v. Brundage,* 709 F.Supp. 10, 12 (D.D.C.1989); *United States v. Robinson,* 697 F.Supp. 1506, 1507 (D.Minn.1988); *but see United States v. Chica,* 707 F.Supp. 84, 85–86 (D.R.I.1989) (imposing, and adhering to, term of supervised release for section 841(b)(1)(B) offense committed during hiatus period). A special parole term was, therefore, not only imposable, but obligatory, for the offense of conviction.

## IV. THE LEFTOVER PIECES

We address, albeit briefly, two additional pieces which appellant claims must be fitted into the puzzle. In our view, neither has any legitimate place in this exercise.

### A. *Due Process.*

The Due Process Clause of the fourteenth amendment demands that criminal statutes put persons on notice of criminally proscribed behavior "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); *see also United States v. Batchelder,* 442 U.S. 114, 123, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979). Similarly, citizens should not have to wonder at the meaning of penalty provisions. *See United States v. Colon–Ortiz,* 866 F.2d 6, 9 (1st Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 1966, 104 L.Ed.2d 434 (1989).

Although acknowledging that the statutes in question are not a model of legislative draftsmanship, we do not think that the statutory scheme is so tenebrous as to fail constitutional muster. The enactments, although they require some study, are quite definite. They consistently adjure post-confinement monitoring for those who transgress what was formerly section 841(b)(1)(B). And, the functional equivalence of special parole and supervised release eliminates any possibility of cognizable confusion. Under the former mechanism, the Parole Commission is charged with responsibility for a defendant's post-confinement oversight, whereas the sentencing court is the monitoring agency under the latter mechanism. Otherwise, the similarities are striking. In both cases, the probation department performs the task of actually keeping tabs on the offender. At least two circuits have indicated that the variations between special parole and supervised release present only "a distinction without a difference." *United States v. Molina–Uribe,* 853 F.2d 1193, 1198 (5th Cir.1988) (footnote omitted), *cert. denied,* —— U.S. ——, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989); *United States v. Smith,* 840 F.2d at 890 n. 3. Whether or not that is literally so, the modalities bear such a strong family resemblance that forewarning a defendant as to one is tantamount to forewarning him as to the other.[5]

 Individuals are entitled to fair notice of the criminal consequences of felonious activities—not necessarily letter perfect notice. In this instance, the pieces of the puzzle, once arranged sequentially, form an unmistakable picture: no matter how a person of ordinary intellect might

---

(*contra;* applying term of supervised release). Where the statutory reference to a term of supervised release constitutes a new imposition, not merely a substitution of supervised release for special parole, ADAA § 1004 would not apply. There would thus be nothing of substance to rebut the "effective forthwith" presumption. And, we think it logical that Congress may have intended to reengage the slipped cog, *see supra* note 1, in advance of the effective date of the Sentencing Reform Act. Where section 1004, then, does not implicate the provisions of section 1002, supervised release, like the other penalty enhancements ordained by the ADAA, was quite probably effective immediately.

5. Moreover, what differences we can hypothesize portray supervised release as perhaps more onerous than special parole, *e.g.,* a term of supervised release, unlike a special parole term, can be extended by the court at any time prior to its expiration. *See* 18 U.S.C. § 3583(e)(2) (Supp. IV 1986). This is all the more reason, of course, why Ferryman—who received special parole instead of supervised release—has no authentic ground for constitutional complaint.

read the statutory mosaic, he would assuredly have known that a mandatory interval of post-confinement monitoring would follow a sentence imposed under 21 U.S.C. § 841(b)(1)(B) (Supp. II 1984), even for an offense perpetrated during the hiatus period. The penalty provision was sufficiently well defined to meet the constitutional minima.

### B. *Lenity.*

Appellant's suggestion that the rule of lenity should rescue him from the toils of special parole is a meritless endeavor to squeeze a square piece into a curved space.

 Under the rule of lenity, a "[c]ourt will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." *Ladner v. United States,* 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958). But, an indispensable condition for the rule's operation is statutory ambiguity. *See Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980). The doctrine is not invoked until a court, "[a]fter 'seiz[ing] every thing from which [legislative intent] can be derived ... [is] left with an ambiguous statute'." *United States v. Bass,* 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971) (citation omitted).

In this case, the amendments, howsoever read, do not meaningfully "increase" the applicable penalty. Furthermore, guesswork is unnecessary: it appears beyond question that Congress meant to subject defendants sentenced under 21 U.S.C. § 841(b)(1)(C) (Supp. IV 1986) to a period of post-confinement monitoring; and it also appears with clarity enough that Congress' intent was to continue to require a special parole term vis-a-vis what would have been section 841(b)(1)(B) (Supp. II 1984) offenses perpetrated during the hiatus period. Accordingly, the rule of lenity is inapposite. *See Bifulco,* 447 U.S. at 387, 100 S.Ct. at 2252; *Bass,* 404 U.S. at 347, 92 S.Ct. at 522; *United States v. Noe,* 634 F.2d 860, 862

(5th Cir.), *cert. denied,* 454 U.S. 876, 102 S.Ct. 355, 70 L.Ed.2d 186 (1981).

## V. CLOSING THE BOX

We need go no further. At the end, the court below assembled the puzzle's pieces adroitly, vacating the original term of supervised release and replacing it with the mandatory special parole term required by law. No substantial error appearing, the district court's amended judgment must be

*Affirmed.*

### ORDER OF COURT

The appellee's petition for rehearing is DENIED. The issue of the length of mandatory minimum terms of post-confinement monitoring for drug-related offenses committed during the hiatus period was not raised below or in the briefs. That issue, therefore, is not properly before us. Neither our panel opinion nor this order should be read as intimating any view on that issue.