**UNITED STATES of America, Plaintiff,**

v.

**Alfonso RAMIREZ, Defendant.**

**Cr. No. CR3–87–154–D.**

United States District Court,
N.D. Texas,
Dallas Division.

May 15, 1990.

Jane E. Jackson, Asst. U.S. Atty., Dallas, Tex., for plaintiff.

Alfonso Ramirez, Big Spring, Tex., pro se.

FITZWATER, District Judge:

The instant Fed.R.Crim.P. 35(a) motion for correction of sentence in this pre-guideline case presents questions of statutory construction arising from Congress' efforts to revise the federal drug laws and to delay implementation of the Sentencing Reform Act of 1984.

## I

Defendant Alfonso Ramirez ("Ramirez") was convicted by a jury of aiding and abetting the distribution of one kilogram of cocaine in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). The date of the offense was May 21, 1987. On November 6, 1987 the court committed Ramirez to the custody of the Attorney General for imprisonment for a period of five years without eligibility for parole. The court further ordered Ramirez to serve a period of supervised release of four years and to pay a mandatory special assessment of $50. The Fifth Circuit affirmed his conviction on direct appeal. *United States v. Ramirez*, 860 F.2d 435 (5th Cir.1988) (table). Ramirez now moves the court to correct his sentence so that he will become eligible for parole and so as to eliminate the requirement that he serve a period of supervised release. His motion is timely because former Rule 35(a) permits the court to correct an illegal pre-guideline sentence at any time.

## II

### A

■ The court first considers Ramirez's contention that he is eligible for parole. Ramirez argues that the court erroneously sentenced him pursuant to the version of 21 U.S.C. § 841(b)(1)(B) in effect on May 21, 1987—the date of his offense— when in fact he should have been sentenced pursuant to the provisions of 21 U.S.C. § 841(b)(1)(A)(ii) prescribed by § 502 of the Controlled Substances Penalties Amendments Act of 1984, Pub.L. No. 98–473, § 502, 98 Stat. 2068. This proposition is foreclosed by the Fifth Circuit's recent opinion *United States v. Robles–Pantoja*, 887 F.2d 1250 (5th Cir.1989). There the court held that the no parole provisions of the Anti–Drug Abuse Act of 1986 ("1986 Act"), Pub.L. No. 99–570, 100 Stat. 3207, became effective on October 27, 1986. Because this preceded the date of Ramirez's offense, he was correctly sentenced to a term of imprisonment without parole eligibility.[1]

### B

The court next considers whether it properly imposed a term of supervised release. This question is more difficult.[2]

#### 1

■ The court begins by recognizing that the Fifth Circuit, in two cases, has stated in absolute terms that a district

---

**1.** Ramirez also argues that the no parole provision is an *ex post facto* law as applied to him and that the Fifth Circuit's interpretation of this law violates the rule of lenity. There is no basis for either argument. The Fifth Circuit has concluded the no parole provision was effective immediately upon enactment on October 27, 1986. Ramirez committed his offense on May 21, 1987. Because the no parole law took effect prior to the date of Ramirez's offense, it is not an *ex post facto* law.

Similarly, the rule of lenity argument is without basis. This rule is a principle of statutory construction that prohibits a court from interpreting a statute to increase the penalty imposed upon on an individual when that interpretation can be based on no more than a guess as to what Congress intended. *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980). Statutes are effective immediately in the absence of a contrary provision. *Robles–Pantoja*, 887 F.2d at 1257. There is no indication that Congress desired to delay the effective date of the no parole provision. *Id.* Thus Congress' intent is unambiguous and the

rule of lenity does not come into play. *See Bifulco*, 447 U.S. at 387, 100 S.Ct. at 2252.

**2.** The circuits that have addressed the question are split. The Third and Ninth Circuits have concluded that the supervised release provisions of § 841(b) became effective immediately upon enactment. Thus imposition of a term of supervised release is proper. *United States v. Gozlon–Peretz*, 894 F.2d 1402, 1404 (3d Cir.1990); *United States v. Torres*, 880 F.2d 113, 115 (9th Cir. 1989), *cert. denied*, — U.S. ——, 110 S.Ct. 873, 107 L.Ed.2d 956 (1990). The Tenth Circuit has held that neither supervised release nor special parole is available for offenses punishable under the 1984 version of § 841(b)(1)(A). *United States v. Levario*, 877 F.2d 1483, 1489 (10th Cir.1989). The Eighth Circuit has determined that supervised release is unavailable for offenses under the 1984 version of § 841(b)(1)(A) but that special parole is available. *United States v. Portillo*, 863 F.2d 25, 26 (8th Cir.1988) (per curiam). The First Circuit in *dictum* has speculated that supervised release, but not special parole, is available. *United States v. Ferryman*, 897 F.2d 584, 590 n. 4 (1st Cir.1990).

court is not permitted to impose a term of supervised release for an offense committed prior to November 1, 1987. *See United States v. Byrd*, 837 F.2d 179, 180 (5th Cir. 1988); *United States v. De Los Reyes*, 842 F.2d 755, 758 (5th Cir.1988) ("Congress authorized supervised release only as a penalty for violations of section 841(a)(1) occurring after November 1, 1987"). Were *Byrd* and *De Los Reyes* on all fours with the present case, the court's imposition of supervised release would be illegal since Ramirez committed his offense on May 21, 1987. But the facts of the two cases, and further Fifth Circuit construction of § 841(b) in *Robles–Pantoja*, reflect that the broad statements in *Byrd* and *De Los Reyes* are *dictum* as applied to the instant facts.

The present case is distinguishable because the portion of § 841(b)(1)(B) at issue in this case, unlike the statutory provisions involved in *Byrd* (§ 845a(a)), *De Los Reyes* (§ 841(b)(1)(C)), and *Robles–Pantoja* (the portion of § 841(b)(1)(B) covered by pre–1986 § 841(b)(1)(B)), did *not* provide for a special parole term prior to the 1986 Act. Therefore, it is arguable that § 1004 of the 1986 Act, which globally replaced "special parole term" with "term of supervised release" throughout the federal narcotics laws, did not affect § 1002's specific imposition of a term of supervised release for those offenses for which a special parole term did not exist immediately prior to the 1986 Act. The First Circuit recently advocated this position in *dictum:*

> Where the statutory reference to a term of supervised release constitutes a new imposition, not merely a substitution of supervised release for special parole, [1986 Act] § 1004 would not apply. There would be nothing of substance to rebut the "effective forthwith" presumption. And, we think it logical that Congress may have intended to reengage the slipped cog ... in advance of the effective date of the Sentencing Reform Act. Where section 1004, then, does not implicate the provisions of section 1002, supervised release, like the other penalty enhancements ordained by the [1986

Act], was quite probably effective immediately.

*United States v. Ferryman*, 897 F.2d 584, 590 n. 4 (1st Cir.1990).

*Ferryman* applies to Ramirez's case in this way: Ramirez's one kilogram offense, after 1984 but prior to 1986, was punishable pursuant to § 841(b)(1)(A). The pre-1986 version of this section did not provide for special parole. In § 1002 of the 1986 Act the one kilogram offense was assigned for punishment to § 841(b)(1)(B), and Congress added as a penalty a mandatory period of supervised release. Hence, § 1004 of the 1986 Act did not apply to a *new* imposition of supervised release effected specifically by § 1002.

Because this court is unquestionably bound by Fifth Circuit precedent, one may argue with some force that Fifth Circuit *dicta* is more persuasive than is the *dicta* of another circuit court. But the approach suggested in *Ferryman* does not appear to be in any way inconsistent with the rationale of *Byrd* or subsequent cases. The *Byrd* panel reasoned that although no specific effective date was mentioned in § 1002 of the 1986 Act, § 1004 was expressly tied to the effective date of the Sentencing Reform Act. *Byrd*, 837 F.2d at 181 n. 8. The *Byrd* panel then stated, "[t]he changes made by section 1004 include the relevant change made by section 1002." *Id.* This statement is unquestionably correct in the factual setting of *Byrd*. It is not applicable, however, to offenses punishable pursuant to the 1984 version of § 841(b)(1)(A). With regard to those offenses, § 1002 did not merely change the terminology used to refer to post-confinement supervision. Rather, § 1002 imposed post-confinement supervision for the first time since 1984. Section 1004 had no effect with regard to offenses punishable pursuant to the 1984 version of § 841(b)(1)(A) because § 1004 merely replaced the term "special parole" with "supervised release" in all instances where it occurred. Section 1002 imposed an additional punishment—post-confinement supervision—for offenses falling within the 1984 version of § 841(b)(1)(A). The changes made by § 1004 thus *do not* in-

clude the relevant change made by § 1002 with regard to the 1984 version of § 841(b)(1)(A). Hence, a primary premise of *Byrd* is inapplicable to the case now before the court.

The *Byrd* panel also reasoned that Congress intended the effective date of supervised release to be tied to the operative date of mechanisms for administering supervised release. This regimen would not be in place until the Sentencing Reform Act took effect. *Id.* ("tying the effective date of the change to the effective date of the implementing statute would seem to be the more logical arrangement"). At first blush it may indeed seem odd to impose a punishment for which administrative capabilities are not yet extant. Drug offenses included under the 1984 version of § 841(b)(1)(A), however, are subject to lengthy minimum terms of imprisonment. As the Third Circuit has pointed out:

> [G]iven the relatively long periods of incarceration required by these sections, by the time most of these defendants returned to the community, the supervised release provisions of the Sentencing Reform Act would be in effect....

*United States v. Gozlon–Peretz,* 894 F.2d 1402, 1405 (3d Cir.1990) (quoting Slawsky, *Looking at the Law,* 53 Federal Probation 69, 86 (June 1989)). And "to the extent that Congress did inadvertently leave special parole out of the 1984 Act and intended to correct its error with respect to high volume drug offenses in the [1986 Act], it is not reasonable to believe that Congress intended to correct a previous error by making it effective two years hence." *Id.* Thus, at least with regard to offenses falling under the 1984 version of § 841(b)(1)(A), it is entirely reasonable to conclude that Congress intended supervised release to apply immediately to crimes committed on and after the effective date of the Act.

2

The court next determines whether its conclusion violates the rule of lenity. Under this rule a court may not interpret a statute to increase the penalty imposed when the interpretation can be based on no more than a guess as to what Congress intended. *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980). The rule of lenity does not come into play where Congress' intent is unambiguous. *Id.* "[I]t appears beyond question that Congress meant to subject defendants sentenced under 21 U.S.C. § 841(b) (Supp. IV 1986) to a period of post-confinement monitoring...." *Ferryman,* 897 F.2d at 591. There is, moreover, no indication that Congress did *not* intend the supervised release provision to be applicable immediately with respect to offenses that would have fallen within the 1984 version of § 841(b)(1)(A). Section 1004 of the 1986 Act could have no effect on those provisions. Thus the rule of lenity does not prohibit the court's imposition of a term of supervised release.

The court therefore concludes that, properly interpreted, § 1002 of the 1986 Act imposed a requirement of supervised release upon offenses punishable pursuant to § 841(b)(1)(B) immediately upon enactment on October 27, 1986. This provision applied to Ramirez's offense committed May 21, 1987. Defendant's motion to correct sentence is therefore denied.

SO ORDERED.