**DELTA AIR LINES, INC., Petitioner,**

v.

**DEPARTMENT OF TRANSPORTATION, Respondent.**

**American Airlines, Inc., et al., Intervenors.**

No. 94–1011.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 17, 1995.

Decided April 14, 1995.

---

Charles J. Cooper argued the cause, for petitioner. With him on the briefs was Robert E. Cohn. Jonathan T. Cain entered an appearance.

Dale C. Andrews, Deputy Asst. Gen. Counsel, U.S. Dept. of Transp., argued the cause, for respondent. With him on the brief were Paul M. Geier, Asst. Gen. Counsel, Thomas L. Ray and Peter J. Plocki, Attys. U.S. Dept. of Transp.; Anne K. Bingaman, Asst. Atty. Gen., John J. Powers, III and Marion L. Jetton, Attys., U.S. Dept. of Justice.

Nathaniel P. Breed, Jr., Jonathan T. Cain, and Robert E. Cohn entered appearances, for intervenors Salt Lake City Corp., et al.

Before EDWARDS, Chief Judge, HENDERSON and ROGERS, Circuit Judges.

ROGERS, Circuit Judge:

The principal issue presented in this petition for review is whether the Department of Transportation failed to comply with its own regulations by not using insulated procedures in awarding two air carrier routes between the United States and London, England. American Airlines and Delta Air Lines sought certificates of public convenience and necessity from the Department for these routes: American requested both routes, proposing service from Raleigh–Durham (N.C.) and Nashville (Tenn.), and Delta sought one route for flights from Salt Lake City (Utah). After the Acting Assistant Secretary for Aviation and International Affairs issued an order to show cause why the routes should not be awarded to American, he awarded both routes to American. Petitioner Delta Air Lines seeks review on the grounds that the Department's senior career official, rather than the Acting Assistant Secretary, should have made the decision and that "insulated procedures" should have been used to shield the decisionmaker from political influence and limit review by political appointees. Delta also contends that the decision was arbitrary and capricious in its weighing of the relevant criteria. We conclude that the Department's interpretation of its regulations is reasonable and that its decision was not arbitrary or capricious; accordingly, we deny the petition for review.

## I.

The two London routes at issue became available because British Airways replaced USAir on its Charlotte–London and Baltimore–London routes. The Department, acting through the Acting Assistant Secretary for Aviation and International Affairs,[1] instituted carrier selection proceedings to decide among the three route proposals and by order announced that it would use the show cause procedures described in Subpart Q of its regulations. *See* 14 C.F.R. §§ 302.1701–.1790. The order explained that show cause procedures would be used because of the need for an expedited decision and the relatively simple nature of the proceeding, since only two carriers were involved.

Following receipt of written submissions from American, Delta, and other parties before the Department, the Acting Assistant Secretary issued a show cause order tentatively selecting American for both routes and rejecting Delta's application for one route. The show cause order stated a preference for American's routes because of their superior service benefits to potential passengers and the competition that the routes would create against British Airways' routes from Charlotte (N.C.) and Baltimore (Md.). Although the Utah Air Travel Commission and the Salt Lake City Corporation ("the Utah parties") and Delta objected to both the procedures and the result of the show cause order, the Acting Assistant Secretary issued a final order and certificate of public convenience and necessity, awarding the routes to American. In the order, the Acting Assistant Secretary acknowledged that the decision was "close and difficult" but again noted the compara- tive superiority of American's routes in both service and competition against foreign carriers. The order also stated that the procedural concerns expressed by Delta and the Utah parties were untimely but, in any event, were meritless because the carrier selection proceeding was not a "hearing case" as defined by departmental regulations and hence was appropriately decided by the Acting Assistant Secretary without the "insulation" of a decision by the senior career official after an evidentiary hearing. Delta seeks review of the Department's decision. *See* 49 U.S.C. §§ 41307(2)(B), 46110(a).

## II.

In challenging the Department's use of show cause procedures, Delta concedes that the Department is not required by statute to use insulated procedures in international carrier selection cases. Rather, Delta maintains that the Department violated its regulations by failing to use insulated procedures. In Delta's view, insulated procedures entail three components: (1) the decision-maker is the senior career official, who is a career civil servant not subject to removal at will; (2) the process includes an oral evidentiary hearing before an Administrative Law Judge ("ALJ"); and (3) review by political appointees is limited to approving the decision or ordering a remand. The Department maintains that its regulations did not require these procedures in the instant case. The court will reverse the Department's interpretation of its regulations only if it is plainly erroneous or inconsistent with the regulations.[2] *Stinson v. United States,* — U.S.

---

1. At the time of the departmental proceedings, the Department acted through the Acting Assistant Secretary for Policy and International Affairs. That position has been abolished and the functions relevant to this appeal have been assigned to the Assistant Secretary for Aviation and International Affairs. *See* 59 Fed.Reg. 10,060, 10,060–61 (1994). *Compare* 49 C.F.R. § 1.56a(f) (1994) *with* 49 C.F.R. § 1.56(i) (1993). Unless otherwise noted, all citations to the Code of Federal Regulations are to the 1994 edition, which is not materially different from the Code in force at the times relevant to this petition.

2. Delta has not waived its right to present this issue to the court. The Department correctly notes that Delta "is in a particularly poor posi- tion to make [the] claim" that the Department was required to use insulated procedures because Delta failed timely to request a hearing before an ALJ, *see* 14 C.F.R. § 302.1712(c)(1) (petition for oral evidentiary hearing must be filed within fifty-two days after filing of the original application), and Delta's untimeliness is not excused by 14 C.F.R. § 302.1750(c) ("Petitions for reconsideration of an order establishing further procedures will not be entertained...") since the fifty-two day period expired before the Department announced its intent to use show cause procedures. However, the Utah parties timely requested an oral evidentiary hearing before an ALJ, and the Department addressed this request. The issue was thus preserved for review. *See Cellnet Communication, Inc. v. FCC,*

——, ——, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)); *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977) (same); *North American Fund Mgt. Corp. v. FDIC*, 991 F.2d 873, 875 (D.C.Cir.) (quoting *K.N. Energy, Inc. v. FERC*, 968 F.2d 1295, 1299 (D.C.Cir.1992)), *cert. denied*, —— U.S. ——, 114 S.Ct. 418, 126 L.Ed.2d 364 (1993).

■ The Department's pertinent regulations appear in Subparts Q (Expedited Procedures for Processing Licensing Cases) and A (Rules of General Applicability) of 14 C.F.R. pt. 302 (Rules of Practice in Proceedings). Subpart Q contains the regulations that existed when the Civil Aeronautics Board issued certificates of public necessity and convenience. *See* 14 C.F.R. §§ 302.1701–.1790 (1984). Since the transfer of that authority to the Department in 1985 as part of the Civil Aeronautics Board Sunset Act, 49 U.S.C.App. § 1551, the Department apparently has made only superficial modifications to Subpart Q. *Compare* 14 C.F.R. §§ 302.1701–.1790 (1984) *with* 14 C.F.R. §§ 302.1701–.1790 (1994). However, the Department also promulgated new regulations in Subpart A, including provisions to govern cases in which a hearing would be held, 14 C.F.R. § 302.24 (Hearing cases), who the decisionmaker would be, *id.* § 302.22a (DOT decisionmaker), and when insulated procedures would be used.[3]  *Id.* § 302.22a(b) (Hearing cases assigned to the senior career

---

965 F.2d 1106, 1109 (D.C.Cir.1992); *see also* 49 U.S.C. § 46110(d).

Nor is Delta precluded from arguing before this court that a hearing was required because it took inconsistent positions with respect to this issue before the Department. Upon filing its application, Delta requested "expedited procedures pursuant to subpart Q" of the Department's regulations and later, after the Department had announced its intent to use show cause procedures, Delta joined American in requesting that the Department expedite its procedures to reach a decision six weeks from the date of the request. Neither request is inconsistent with Delta's later requests before the Board and before this court for insulated procedures. The Subpart Q procedures requested by Delta are consistent with the use of insulated procedures. *See* 14 C.F.R. §§ 302.1750(a)(1), 302.1751 (discussing a hearing before an ALJ under Subpart Q). Similarly, Delta's request for expedited procedures is consistent with a request for insulated procedures. *See United States–United Kingdom Regional Airport Service Proceeding*, DOT Order 90–7–59, at 3–4, 1990 WL 308672 (July 26, 1990) (hearing before an ALJ set on an expedited basis).

**3.** 14 C.F.R. § 302.22a (DOT decisionmaker) provides:

(a) *Definition.* As used in this Subchapter, the DOT decisionmaker is the official authorized to issue final decisions of the Department.

(b) *Hearing cases assigned to the senior career official.* In hearing cases assigned to the senior career official in the Office of the Assistant Secretary for Aviation and International Affairs, that official is the DOT decisionmaker. In all such cases, the [ALJ] shall render a recommended decision to the senior career official, who shall have all the powers of an [ALJ] and those additional powers delegated by the Secretary.

(1) Decisions of the senior career official are subject to review by, and at the discretion of, the Assistant Secretary for Aviation and International Affairs. A notice of review by the Assistant Secretary will establish the procedures for review. Unless a notice of review is issued, a decision of the senior career official will be issued as a final order of the Department and be served 14 days after it is adopted by the senior career official. Petitions for discretionary review of decisions of the senior career official will not be entertained.

(2) Final decisions of the senior career official may be reviewed upon a petition for reconsideration filed pursuant to § 302.37. Such a petition shall state clearly the basis for requesting reconsideration and shall specify any questions of national transportation policy that may be involved. The Assistant Secretary will either grant or deny the petition.

(3) Upon review or reconsideration, the Assistant Secretary may either affirm the decision or remand the decision to the senior career official for further action consistent with such order of remand.

(4) Carrier selection proceedings for international route authority and such other hearing cases as the Secretary deems appropriate will be assigned to the senior career official.

(c) *Other hearing cases.* In other hearing cases, the Assistant Secretary for Aviation and International Affairs is the DOT decisionmaker. The Assistant Secretary shall have all the powers of an [ALJ] and those additional powers delegated by the Secretary.

(d) *Nonhearing cases.* In all other proceedings, the Assistant Secretary for Aviation and International Affairs or, in consumer protection matters, the Assistant Secretary for Gov-

official). This dual regulatory scheme reflected Congress' authorization for the Department to treat applications for certificates of public necessity and convenience in one of three ways: (1) processing the application by means of simplified procedures as prescribed by regulations promulgated by the Secretary in accordance with 49 U.S.C. § 41111 (Subpart Q procedures), (2) holding a public hearing, or (3) dismissing the application on its merits. 49 U.S.C. § 41108.

Overseeing this regulatory scheme is the Assistant Secretary for Aviation and International Affairs, to whom the Secretary and the Department have delegated their authority. 49 C.F.R. § 1.56a(f); *see* 49 U.S.C.App. § 1551(b). Under Subpart Q, the regulations provide that the Assistant Secretary ("the Department") "will" utilize the expedited procedures described in that subpart and present the case directly to the Department's "decisionmaker" (as determined by Subpart A, 14 C.F.R. § 302.22a(d)), unless the Assistant Secretary determines that more complex procedures, such as a hearing before an ALJ, are necessary to avoid prejudice to a party, resolve material issues of fact, or otherwise vindicate the public interest. 14 C.F.R. § 302.1770. In turn, once the Department, acting through the Assistant Secretary, determines that a hearing should be held regarding an application for a certificate, Subpart A of the regulations defines the nature of the hearing and who will be the Department's decisionmaker. *Id.* §§ 302.24, 302.22a(b) & (c). To the extent that Subpart Q modifies Subpart A, the regulations provide that Subpart Q controls. *Id.* § 302.1702. Thus, under 14 C.F.R. § 302.1770 of Subpart Q, the Assistant Secretary determines whether a case should be a "hearing case" under 14 C.F.R. § 302.24 of Subpart A; whether a hearing is to be held in a case is a factor in determining under 14 C.F.R. § 302.22a of Subpart A who will be the Department's decisionmaker.

In the instant case, the Acting Assistant Secretary selected Subpart Q procedures. This was consistent with the regulatory presumption that expedited procedures without a hearing should be used absent certain exceptions (where a party would be prejudiced, determination of material facts requires a hearing, or the public interest requires non-expedited procedures) not relevant here. *Id.* § 302.1770. Because the Acting Assistant Secretary did not set the case for an oral evidentiary hearing, the case was not, in the Department's view, a "hearing case" under 14 C.F.R. § 302.24, and therefore, pursuant to 14 C.F.R. § 302.22a(d) the Assistant Secretary was the "decisionmaker." Thus, the result of the Department's interpretation of its regulations is that the Acting Assistant Secretary was the Department's decisionmaker and he properly employed show cause procedures without an oral evidentiary hearing or the participation of an ALJ.

Delta contends that the Department has violated its regulations. Delta focuses on the phrasing of subparagraph (b)(4) in § 302.22a—"[c]arrier selection proceedings for international route authority and such other hearing cases as the Secretary deems appropriate"—and maintains that this phrase demonstrates that all carrier selection proceedings for international route authority are Subpart A hearing cases under the Department's regulations and must therefore be assigned for decision to the senior career official. This is a plausible reading of the phrase "such other hearing cases," as an indication that the preceding phrase—"carrier selection proceedings for international route authority"—delineates a subset of hearing cases. However, it is not the only plausible interpretation, and the court must uphold the Department's interpretation "unless it is plainly erroneous or inconsistent with the regulation." *K N Energy, Inc. v. FERC,* 968 F.2d 1295, 1299 (D.C.Cir.1992) (internal quotation omitted).

ernmental Affairs is the DOT decisionmaker. The Assistant Secretaries may delegate this authority in appropriate cases to subordinate officials.

(e) *Secretary and Deputy Secretary.* The Secretary or Deputy Secretary may exercise the authority of the Assistant Secretary whenever he or she believes a decision involves important questions of national transportation policy.

*See* 59 Fed.Reg. 10,060, 10,061 (1994) (amending 14 C.F.R. § 302.22a).

The Department interprets the Subpart A regulations differently from Delta, looking to the structure and organization of § 302.22a. The regulation divides cases into three categories to facilitate selection of the decisionmaker: (1) hearing cases assigned to the senior career official, (2) other hearing cases, and (3) non-hearing cases. From this the Department infers that § 302.22a determines the identity of the decisionmaker only after the Assistant Secretary (acting on behalf of "the Department") determines under Subpart Q whether the case is a hearing or nonhearing case. 14 .C.F.R. § 302.1770. This reading is reinforced by the substance as well as the heading of § 302.24, entitled "Hearing cases," which provides that "[a] hearing case means any proceeding ... that the Department has noticed will be conducted on the record after oral evidentiary hearing subject to 5 U.S.C. [§§] 556 and 557 [the Administrative Procedure Act]." 14 C.F.R. § 302.24(a). This clear and explicit definition, under which some international carrier selection cases are "hearing cases" while other international carrier selection cases are "nonhearing cases," prevails over Delta's far more obscure reading of § 302.22a(b)(4). *See United States v. Ferryman,* 897 F.2d 584, 589 (1st Cir.) (canons of construction require preference for "what is express over what might otherwise be implied"), *cert. denied,* 498 U.S. 830, 111 S.Ct. 90, 112 L.Ed.2d 62 (1990).

The Department further concludes that the heading and first sentence of § 302.22a(b) indicate that this subsection applies only to those cases that have been designated by the Department (acting through the Assistant Secretary) as hearing cases pursuant to §§ 302.1770, 302.24. *See INS v. National Ctr. for Immigrants' Rights, Inc.,* 502 U.S. 183, 189, 112 S.Ct. 551, 555–56, 116 L.Ed.2d 546 (1991) (statutory headings "can aid in resolving an ambiguity in the legislation's text"). This interpretation is directly supported by the provision calling for the preeminence of Subpart Q over Subpart A. 14 C.F.R. § 302.1702. The Department, in addition, observes that its interpretation meshes better with the Department's general organization regulation, 49 C.F.R. § 1.56b (Delegations to the Designated Senior Career Official, Office of the Assistant Secretary for Aviation and International Affairs), which delegates to the senior career official the . authority "to make decisions in all *hearing cases* to select a carrier for ... international route authority...." (emphasis added). The word "hearing" would be superfluous if all international carrier selection cases were hearing cases. *See National Insulation Transp. Comm. v. ICC,* 683 F.2d 533, 537 (D.C.Cir.1982); *see also National Cable Television Ass'n,* 33 F.3d 66, 74 (D.C.Cir.1994). The Department's interpretation is therefore reasonable.

Delta's contention that the Department's interpretation is unreasonable because it renders unnecessary the phrase "carrier selection proceedings for international route authority" in § 302.22a(b)(4) does not withstand scrutiny. Under the Department's interpretation, once any carrier selection case is designated a hearing case, it "will" be assigned to the senior career official. 14 C.F.R. § 302.22a(b)(4). By contrast, other hearing cases may or may not be assigned to the senior career official at the Secretary's discretion. *Id.* § 302.22a(b)(4), (c). Delta correctly notes that the Secretary has discretion to determine which carrier selection cases are assigned to the senior career official by determining which cases will be hearing cases. *Id.* § 302.24(a). However, the specific reference to international carrier selection cases in § 302.22a(b)(4) is not superfluous; although the Secretary usually has discretion regarding which hearing cases will be assigned to the senior career official, hearing cases that are also international carrier selection cases must be assigned to the senior career official. Because the Acting Assistant Secretary never designated the instant case a "hearing case" as defined in § 302.24, the Department's conclusion that § 302.22a(d) applied, and therefore the decisionmaker was the Acting Assistant Secretary, is neither plainly erroneous nor in conflict with the statute or regulations.[4]

---

**4.** The preamble to the regulations, 50 Fed.Reg. 2374, 2374–79 (1985), can be read to support either Delta's interpretation or the Department's. *See Martin v. American Cyanamid Co.,* 5 F.3d

Delta's other objections to the Department's interpretation are based on factors extrinsic to the regulations and fare no better. First, Delta maintains that a regulatory scheme giving the Department discretion to determine whether a case will be assigned to the senior career official for decision is nonsensical and ineffective because political appointees (the Secretary and Assistant Secretary), from whom "insulated" procedures were designed to shield a case, are authorized to decide whether an international carrier selection case will be a hearing case, which in turn determines whether insulated procedures will be used. Even under Delta's interpretation, however, the Assistant Secretary (or Secretary) maintains substantial control over cases assigned to the senior career official; the Assistant Secretary may remand the decision and order the senior career official to take further action consistent with the remand order. 14 C.F.R. § 302.22a(b)(1), (b)(3), (e); *USAir, Inc. v. DOT,* 969 F.2d 1256, 1261 (D.C.Cir.1992). Thus, it is hardly irrational for the Department to create a regulatory scheme under which the Assistant Secretary decides in the first instance whether a case will be a hearing case (and therefore delegated for decision to the senior career official in an international carrier selection case). That this scheme does not minimize the participation of political appointees to the extent desired by Delta does not make it plainly erroneous. *Cf. USAir,* 969 F.2d at 1262 (noting that the insulated procedure, limiting the Assistant Secretary's review to a remand, "does have an artificial quality, but that does not make it illegal").

Second, Delta maintains that the Department's interpretation is refuted by the historical origins and purpose of the insulated procedure rule. However, Delta's reliance on the legislative history of the Civil Aeronautics Board Sunset Act of 1984 to show that the Department's interpretation is contrary to assurances the Department made to Congress is misplaced. In hearings before the House Subcommittee on Aviation, the Department stated that it intended to use insulated procedures in international carrier selection cases.[5] The House Committee Report, in turn, commented on the need for insulated procedures in international carrier selection cases. H.R.REP. No. 793, 98th Cong., 2d Sess. 8–10, *reprinted in* 1984 U.S.C.C.A.N. 2857, 2864–66 ("House Report"). The salient point, however, is that Congress did not require the Secretary to use insulated proceedings in all international carrier proceedings. Instead, it left discretion to the Secretary to promulgate regulations.[6] The court has no occasion to second guess the legislative decision in this regard.[7] *Cf. Lincoln v. Vigil,* —— U.S. ——, ——, 113 S.Ct. 2024, 2032, 124 L.Ed.2d 101 (1993).

Finally, Delta erroneously maintains that the procedure employed in this case was unprecedented and contrary to the Department's established practice of assigning all international carrier selection cases for decision by the senior career official. The Assistant Secretary has been the decisionmaker in other international carrier selection cases. *U.S.–Colombia Combination Service Case,* DOT Order 93–9–12, 1993 WL 349794 (August 10, 1993); *Delta Air Lines,* DOT Order

140, 145 (6th Cir.1993); *Martin v. OSHRC,* 941 F.2d 1051, 1056 (10th Cir.1991).

**5.** *See Review of Airline Deregulation and Sunset of the Civil Aeronautics Board (Organization and Procedures To Be Followed by the Department of Transportation in Administering Its New Responsibilities After Sunset of the Civil Aeronautics Board): Hearings Before the Subcomm. on Aviation of the House Comm. on Public Works and Transportation,* 98th Cong., 2d Sess. 9–10, 31–33, 79–81 (1984).

**6.** With respect to insulated procedures, the Report of the House Committee states that "we have decided not to legislate on this issue at this time in view of the strong plea of the Department

that [it] be given flexibility in setting up the organization to administer [its] new responsibilities." House Report 9, *reprinted in* 1984 U.S.C.C.A.N. at 2865.

**7.** Delta speculates that in light of expressions of grave concern by Members of Congress about the potential for political influence affecting international route selection, "Congress likely would have enacted its own *statutory* insulated decisionmaking procedures for international carrier selection cases if the [Department] had disclosed in 1984 that it planned to retain full discretion to assign decisionmaking authority over such cases to politically accountable appointees." Such arguments are more appropriately directed to Congress.

93–8–11, 1993 WL 302603 (August 9, 1993). Moreover, under the Department's regulatory interpretation, although the Assistant Secretary is the decisionmaker in nonhearing carrier selection cases under § 302.22a(d), the same section permits the Assistant Secretary to "delegate this authority in appropriate cases to subordinate officials." 14 C.F.R. § 302.22a(d). Therefore, cases in which the assignment to the senior career official is based on the applicability of § 302.22a(d), *e.g., Guam/Saipan–Osaka Combination Service Case,* DOT Order 93–6–23, at 5, 1993 WL 217423 (June 16, 1993), do not imply the applicability of § 302.22a(b).[8]

## III.

 Delta further contends that the award of the routes to American was arbitrary and capricious in balancing relevant factors. The court gives substantial deference to the Department's weighing of factors, and its review of the Department's decision is "quite limited." *USAir,* 969 F.2d at 1263 (" 'selection ... among several qualified applicants is basically a matter of judgment, often difficult and delicate, entrusted by Congress to the administrative agency' ") (quoting *Delta Air Lines, Inc. v. CAB,* 564 F.2d 592, 596 (D.C.Cir.1977)). To the extent that Delta maintains that the weight given certain factors was inappropriate, it presents no basis that counsels against deference to the Department's expertise and judgment. To the extent that Delta maintains that the Department considered illegitimate factors, its contention is unsupported by the record. Instead, the Department based its decision primarily on the service provided to passengers, which it found to be comparable for each of the three routes, with a slight advantage to American; competition among United States carriers, which it found would be best promoted by awarding one of the routes to Delta, since American is the dominant United States carrier in the United States–United Kingdom market; and competition against foreign carriers, which it found would be best promoted by awarding both routes to Ameri-

can. The Department concluded that the competition against foreign carriers was a more urgent interest than competition among United States carriers, given British Airways' recent gateway acquisitions in the vicinity of American's proposed gateways. This exercise of the Department's expertise and judgment was within its statutory mandate.

Accordingly, we deny the petition for review.

---

**8.** We do not reach Delta's due process challenge to the Department's choice of decisionmaker because Delta did not raise this issue before the Department and has not offered any explanation for not doing so. *See* 49 U.S.C. § 46110(d); *see also Northwest Airlines, Inc. v. FAA,* 14 F.3d 64, 72 (D.C.Cir.1994); *USAir,* 969 F.2d at 1259.