**Miguel PADILLA PALACIOS,**
**Petitioner, Appellant,**

v.

**UNITED STATES of America,**
**Respondent, Appellee.**

**No. 90–2057.**

United States Court of Appeals,
First Circuit.

Submitted May 11, 1991.

Decided April 26, 1991.

Miguel Padilla Palacios, pro se.

Daniel F. Lopez–Romo, U.S. Atty., Jose A. Quiles, and Esther Castro Schmidt, Asst. U.S. Atty., on brief, for respondent, appellee.

Before BREYER, Chief Judge, CAMPBELL and CYR, Circuit Judges.

PER CURIAM.

Petitioner, Miguel Padilla Palacios, appeals the district court's denial of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2255. We affirm the district court.

### Background

In May 1987, petitioner was apprehended on a boat which was transporting approximately 2791.4 pounds of cocaine from Colombia to the United States. Petitioner pled guilty to possession with intent to distribute controlled substances on board a vessel in violation of 46 U.S.C. App. § 1903 and 18 U.S.C. § 2. Petitioner was sentenced to a thirty-year term of imprisonment followed by a ten-year term of supervised release plus a fifty dollar monetary assessment. It seems petitioner did not take a direct appeal.

Petitioner subsequently filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 in the district court. He essentially argued (1) that by sentencing him to a ten-year term of supervised release the district court had failed to comply with the terms of the petitioner's plea agreement and (2) that the district court denied petitioner his right of allocution as provided by Fed.R.Crim.P. 32.[1]

Petitioner's claims were examined by a magistrate. The magistrate recommended that the petitioner be resentenced to vacate the supervised release portion (and that it not be replaced with a special parole term), but found petitioner's contention that he had been denied his right of allocution to be without merit. The district court accepted the magistrate's recommendation in part, but refused to vacate the supervised

release portion of the sentence. Petitioner appealed.

### Discussion

1.  Supervised Release

Petitioner contends that the imposition of the ten-year supervised release term as part of his sentence is illegal, in violation of the ratified plea agreement and contrary to the fundamental fairness of law. This claim raises two issues: (1) whether the applicable law dictates the imposition of a term of post-confinement monitoring, and if so, what form should such monitoring take, and (2) whether, under the circumstances of this case, discussed below, the term of post-confinement monitoring was, nonetheless, imposed in error.

### A

First we consider whether it was appropriate for the sentencing court to impose a term of supervised release. We note that petitioner's crime took place in May 1987. This date is significant because it falls during what has come to be known as the "hiatus period" between two different versions of the federal drug laws. *See United States v. Ocasio Figueroa*, 898 F.2d 825 (1st Cir.1990); *United States v. Ferryman*, 897 F.2d 584 (1st Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 90, 112 L.Ed.2d 62 (1990).

Congress amended the applicable laws three times in the last decade. In 1984, Congress passed the Crime Control Act, Pub.L. No. 98–473, §§ 500–522. In 1986, Congress passed the Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570, 100 Stat. 3207 (hereinafter the "ADAA"). In 1988, Congress then passed the Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690. Each of these laws amended the earlier version. As a result, there was considerable confusion regarding which version would be in force at which time. The problem was most acute for the period running from October 27, 1986, the date of passage of

---

[1] Petitioner also claimed that the district court sentenced him to an unconstitutionally disproportionate sentence in violation of the Eighth Amendment. Petitioner subsequently withdrew this claim.

the ADAA, until November 1, 1987, the specified effective date of many of the 1984 and 1986 amendments, including the Sentencing Guidelines.

The problem with which we are here concerned, and which we addressed in *Ocasio Figueroa, Ferryman* and *United States v. Garay*, 921 F.2d 330 (1st Cir.1990) (per curiam), is whether post-confinement monitoring of defendants convicted under 21 U.S.C. §§ 841 and 960 for crimes committed during the hiatus period is mandatory, and if so, whether such monitoring should be in the form of supervised release or special parole.

The problem arose because ADAA §§ 1002 and 1302, which replaced large portions of the texts of 21 U.S.C. §§ 841(b)(1) and 960(b), respectively, and imposed mandatory supervised release terms, did not include effective dates. Thus, absent contrary legislative intent, the presumption was that they took effect upon passage. *Ferryman*, 897 F.2d at 588. However, ADAA § 1004, which amended §§ 841 and 960 (as well as other sections) by "striking out 'special parole term' each place it appears and inserting 'term of supervised release' in lieu thereof," explicitly stated that the effective date was November 1, 1987,[2] raising the question of whether the mandatory supervised release terms applied only to crimes committed after November 1, 1987. In view of these somewhat conflicting signals, courts questioned whether the correct form of post-confinement monitoring for crimes committed during the hiatus period (October 26, 1986 to November 1, 1987) was supervised release or special parole.

We concluded that those ADAA amendments which added mandatory supervised release provisions to sections which had not previously mandated post-confinement monitoring would become effective upon the date of passage, October 27, 1986. *Ga-*

*ray*, 921 F.2d at 333; *Ocasio Figueroa*, 898 F.2d at 828; *Ferryman*, 897 F.2d at 589. We also concluded that where special parole had already been required by the pre-ADAA version of the statute, special parole would continue to be the appropriate method of post-confinement monitoring during the hiatus period. *Garay*, 921 F.2d at 334; *Ocasio Figueroa*, 898 F.2d at 828. Our latter conclusion was based on "the fact that standards for the imposition of supervised release were not solidly in place until November 1, 1987 (when 18 U.S.C. § 3583 became effective)" and our belief that "it best effectuates Congress' discernible intent, where supervised release is not an innovation but replacement for special parole, to read the statutory language as implementing a simultaneous one-time swap of one for the other." *Ferryman*, 897 F.2d at 589.

The Supreme Court, however, has recently addressed this issue in *Gozlon–Peretz v. United States*, — U.S. —, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991), and it reached a result which implicitly overruled our decisions in *Ocasio Figueroa, Ferryman* and *Garay*. The Supreme Court, by unanimous decision, held that for offenses committed in the hiatus period, supervised release applies for *all* drug offenses in the categories specified by ADAA § 1002. *Id.* — U.S. at —, 111 S.Ct. at 849. In so doing, the Supreme Court "reject[ed] the holdings of ... some courts of appeals that, because the statutory provision for imposing and revoking supervised release did not go into effect until November 1, 1987, the rules governing special parole should apply to crimes committed in the interim period before that date." *Id.*

■ *Gozlon–Peretz* dealt with interpreting ADAA § 1002 and 21 U.S.C. § 841. These provisions are parallel to those raised in this case, ADAA § 1302 and 21 U.S.C. § 960.[3] We can therefore conclude,

---

**2.** The precise wording of ADAA § 1004(b) was that "[t]he amendments made by this section shall take effect on the date of the taking effect of section 3583 of title 18, United States Code."

**3.** At the time the offense was committed (May 1987), § 960 read in pertinent part as follows:

(b)(1) In the case of a violation of subsection (a) of this section involving—
  (B) 5 kilograms or more of a mixture or substance containing a detectible amount of—

  .    .    .    .    .

  (ii) cocaine ...

for the same reasons stated by the Supreme Court in *Gozlon–Peretz*, that supervised release applies for *all* drug offenses committed during the hiatus period in the categories specified by ADAA § 1302. Consequently, in this case, the appropriate form of post-confinement monitoring would be supervised release. Indeed, the statute mandated that a supervisory release term be imposed. Thus, the district court was following the mandate of 21 U.S.C. § 960 as amended through the ADAA of 1986 when it imposed the ten-year term of supervised release.

## B

The question remains, however, whether there are any special reasons why petitioner should not be subject to a supervised release term. Petitioner argues that the term of post-confinement monitoring is, in fact, illegal and in violation of the ratified plea agreement.[4] Petitioner bases this claim on the following exchange which took place during his August 25, 1987 change of plea hearing:

> MR. QUILES: In essence, your Honor, the defendants are pleading guilty to the only count of the Indictment and in exchange for that plea, the Government at the time of sentencing will reserve the right of allocution but *will leave the matter of sentencing itself to the sound discretion of the court;* that in essence is the plea agreement ... The government has agreed not as part of the plea agreement that in those cases where the

the person committing such violation shall be sentenced to a term of imprisonment of not less than 10 years and not more than life ... Any sentence under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 5 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 10 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this paragraph. No person sentenced under this paragraph shall be eligible for parole during the term of imprisonment imposed therein.

defendants have prior records, not to file information to enhance the penalty.

> THE COURT: Yes, but I would like in this *plea agreement* which is mentioned that the court must impose a term of supervised release. As far as I am concerned, that law does not come into effect until sometime later this year and the court has not informed the defendant of such a law. The court will not inform the defendant of such a law and the court, *I will not impose a term of supervised release.* ... Let me make it clear to each defendant that this plea agreement in [no] way curtails or diminishes the power or authority of the court to impose upon you the maximum penalty provided by the law as I explained before and other conditions as I explained before. Are you aware of that?

> . . . . .

> MR. PADILLA: Yes, sir.

Appellant's Brief at A27–A29 (emphasis added).[5] We note that the plea agreement, which had been initialed and agreed to by the petitioner prior to the hearing, included post-confinement monitoring. However, the district court, believing that the supervised release provisions would not go into effect until November 1987, ordered that provision struck. We also note that the plea agreement left sentencing to the discretion of the court and that the district court expressly stated that its power to impose the maximum penalty was in no way diminished. Petitioner stated that he understood.

21 U.S.C. § 960, as amended, Pub.L. No. 99–570, 100 Stat. 3207–15, § 1302 (1986).

4. Petitioner seeks vacation of the term of supervised release. We note that even if we were to find for the petitioner, it is by no means clear that vacating the term of supervised release would be the appropriate remedy. *United States v. Kurkculer*, 918 F.2d 295, 298–300 (1st Cir.1990) (the court, not the defendant, chooses the remedy).

5. Petitioner did not supply us with full transcripts but instead included copies of relevant portions of those transcripts in the appendix of his brief.

On November 13, 1987, the district court sentenced petitioner to a thirty-year term of incarceration followed by a ten-year term of supervised release plus a $50 monetary assessment. The petitioner, who was represented by counsel, did not object to the imposition of a term of supervised release at the sentencing hearing. Appellant's Brief at A23.

On December 13, 1989, petitioner, now *pro se*, filed the § 2255 petition which is the subject of this appeal. The magistrate's report and recommendation, which issued just prior to our opinions in *Ferryman* and *Ocasio Figueroa*, recommended that petitioner be resentenced to a prison term not followed by post-confinement monitoring. The magistrate based his conclusion on case law from other circuits holding that under the then-applicable law, post-confinement monitoring should not be imposed. Consequently, the magistrate did not address the question of whether the change of plea hearing was in fact constitutionally infirm because the district court did not accurately explain the punishment to which petitioner would be subject if he pled. The district court, citing the *Ferryman* and *Ocasio Figueroa*, decisions concluding that some sort of post-confinement monitoring was required by law, rejected the magistrate's conclusion on this point. Petitioner appealed.

■ We conclude that the petitioner's rights were not violated by the district court's imposition of the term of post-confinement monitoring even though the district court stated that it would not impose a term of supervised release. Petitioner's claims are virtually identical to those made in *United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979). In *Timmreck*, a defendant petitioned pursuant to 21 U.S.C. § 2255, to vacate his sentence on the theory that the judge had failed to describe the mandatory special parole term of at least three years required by the applicable statute. Defendant's counsel had not objected to the imposition of the special parole term at the sentencing hearing, and no appeal had been taken. The Supreme Court held that this error was not of the sort cognizable under § 2255, stating as follows:

> Such a violation is neither constitutional nor jurisdictional: the 1966 amendment to Rule 11 obviously could not amend the Constitution or limit the jurisdiction of the federal courts. Nor can any claim reasonably be made that the error here resulted in a "complete miscarriage of justice" or in a proceeding "inconsistent with the rudimentary demands of fair procedure." Respondent does not argue that he was actually unaware of the special parole term or that, if he had been properly advised by the trial judge, he would not have pleaded guilty. His only claim is a technical violation of the Rule. That claim could have been raised on direct appeal, but was not.

*Timmreck*, 441 U.S. at 783–84, 99 S.Ct. at 2087 (citation omitted).

To be sure, in the present case, petitioner was affirmatively told by the district court that a supervised release term would *not* be imposed, whereas in *Timmreck* the judge accepting the guilty plea had omitted mention of the mandatory term of post-confinement monitoring. Nevertheless, in this case, too, we conclude, petitioner alleges only a technical violation of Rule 11. Petitioner does not allege, and there is no evidence so suggesting, that had petitioner known that post-confinement monitoring was mandatory, he would not have pled guilty. In fact, since the original plea agreement, initialed by the petitioner, included a term of supervised release, the record suggests that the existence or absence of post-confinement monitoring was not a factor in the decision to plead guilty. In any event, the plea agreement did not specify a sentence, and instead left sentencing to the discretion of the district court. *Compare, United States ex rel. Russo v. Attorney General of Illinois*, 780 F.2d 712, 716–719 (7th Cir.1986) (defendant's rights were violated where state trial judge informed defendant of minimum and maximum penalties as required by state law but omitted mention of mandatory parole term and then explicitly ratified the plea agreement by promising to impose

the sentence therein—which did not include a parole term).

As petitioner has not alleged any other aggravating circumstances, we conclude that petitioner has raised only a technical violation, not the sort of jurisdictional or constitutional infirmity cognizable under § 2255. Collateral relief is therefore unavailable.

## 2. The Right of Allocution

■ Petitioner also claims that he was denied the opportunity to speak directly to the court prior to sentencing as provided by Fed.R.Crim.Proc. 32(a)(1)(C).[6] Specifically, petitioner argues that although he did personally address the court, he was intimidated because of the court's attitude and hence did not speak freely. He bases his argument on the following exchange which took place after a lengthy exposition of mitigating factors by petitioner's counsel:

COUNSEL: Your Honor, excuse me, the defendant may wish to have the right of allocution.

THE COURT: No, *you* don't have the right of allocution. *You* have used the right of allocution, you have been there for almost a half an hour. I am going to give *him* his opportunity but *you* have already used your opportunities ... and you used it very well ... I want Mr. Padilla, Mr. Padilla Palacios, if you are going to say something, you may [say] something as to the amount, the large amount[,] that you and your other two defendants brought into the United States. Go ahead.

MR. PADILLA: Your Honor, about this time that I committed this, I know I committed it and I ask your forgiveness for this and I hope that you give me at least one opportunity because I have a son whom I left very small who hasn't even been baptized yet. He is the only son that I have and for me it has been like starting my life again because I love my son very much and also my wife and when I lose my family it is like the end of the world for me. That is all your honor.

THE COURT: All right, there is something that must be established clearly. All three defendants have requested leniency or a second opportunity. The whole trouble is that they had an opportunity already. These are second offenders ...

Appellant's Brief at A22 (emphasis added). Clearly, petitioner did address the court. When the district court said "No, you don't have the right of allocution," it was directing that comment towards counsel, not petitioner.[7] Immediately thereafter, petitioner addressed the court, listing some mitigating factors. Even if the district court may not have been as gracious as petitioner would have liked, the district court did invite the petitioner to address the court (as the district court had earlier invited petitioner's co-defendants to speak), and the petitioner did do so. It is also clear that the court heard petitioner's plea for leniency, but that the court had reasons for discounting that plea. This was not inappropriate. *See United States v. Twomey,* 806 F.2d 1136, 1142 (1st Cir.1986) (right of allocution does not include the right to be believed). Simply, we see no evidence that the petitioner was denied his right of allocution.[8]

---

**6.** The relevant portion of Rule 32(a)(1) is as follows:

Before imposing sentence the court shall also—

(C) address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of sentence.

**7.** Petitioner argues that the word "allocution" refers only to statements of the accused, not his attorney. While the petitioner's definition of the term is correct according to *Black's Law Dictionary,* as the district court later acknowledged, *see* Memorandum and Order at 6, it is also clear from the context of the statement that the district court was using the word "allocution" the second time, albeit somewhat imprecisely, to refer to the attorney's speech on behalf of petitioner.

**8.** We note that even if petitioner had not been given the opportunity to address the court, it is doubtful that we would remand for resentencing. The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is rarely an error of the character or magnitude cognizable under a writ of habeas corpus. *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468,

*Conclusion*

For the reasons stated herein, we find that petitioner was not denied his right of allocution. Nor do we find that the district court made more than a technical error under rule 11 when it later imposed the ten-year term of supervised release following the conclusion of petitioner's term of incarceration. Consequently, we *affirm* the district court's denial of the petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2255.

*Affirmed.*

471, 7 L.Ed.2d 417 (1962); *Green v. United States,* 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961); *cf. United States v. Buckley,* 847 F.2d 991, 1002 (1st Cir.1988) (denial of right of allocution may be grounds for remand when issue raised on direct appeal).