September 24, 1993
[NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1364

UNITED STATES,

Appellee,

v.

EFRIAM NATANEL,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Breyer, Chief Judge,

Selya and Boudin, Circuit Judges.

Efriam Natanel on brief pro se.

A. John Pappalardo, United States Attorney, and Jonathan Chiel,

Assistant United States Attorney, on brief for appellee.

Per Curiam. Defendant Efriam Natanel appeals from the

grant of a motion under Fed. R. Crim. P. 36 to correct a

clerical mistake in the judgment. The district court amended

the judgment to include a four-year period of supervised

release that, according to the government, had been verbally

imposed by the sentencing judge but inadvertently omitted

from the written judgment. Defendant argues that it was not,

in fact, the judge's intention to impose such a sanction. He

also contends that various procedural irregularities rendered

the court's action here otherwise improper. We find each of

these arguments without merit and therefore affirm.

On June 1, 1989, defendant was convicted by a jury of

distributing more than 500 grams of cocaine to another

individual, in violation of 21 U.S.C. 841(a)(1),

841(b)(1)(B)(ii)(II). See United States v. Natanel, 938 F.2d

302 (1st Cir. 1991) (affirming conviction on direct appeal),

cert. denied, 112 S. Ct. 986 (1992).1 The offense occurred

in May 1987. At sentencing on September 15, 1989, Judge

McNaught imposed a six-year prison term, a $20,000 fine, a

$50 special assessment, and a four-year term of supervised

release. Yet the written judgment, dated October 2, 1989,

contained no reference to the period of supervised release.

In November 1992, the government filed the instant motion to

correct the judgment. Judge McNaught having retired in the

interim, another district court judge received and summarily

granted the motion without calling for a response from

1. Our reference there to the conviction having occurred in
1990, see 938 F.2d at 308-09, is in error.

defendant; the judgment was accordingly amended to reflect

the term of supervised release. Defendant submitted an

opposition, which arrived after the court's order, and then a

motion for reconsideration, which was summarily denied. This

appeal followed.

I.

It is clear that Judge McNaught intended to impose, and

did impose, a term of supervised release at sentencing--

despite an initial pronouncement to the contrary. The

confusion appears to have stemmed from the fact that the

government, when first recommending a sentence, failed to

mention this sanction.2 See Sent. Tr. at 2. The court,

stating that it would "not go beyond the recommendations of

the prosecutor," therefore announced that "there will not be

a period of supervised release." Id. at 18. The government

immediately revised its recommendation and argued that

supervised release was mandatory under 21 U.S.C.

841(b)(1)(B). The court, acknowledging a lack of familiarity

with such requirement, eventually accepted this view after

consulting the statute and explicitly included a four-year

2. We note that defendant's attorney did recognize that a
period of supervised release would be "appropriate." Sent.
Tr. at 6.

-3-

term of supervised release in the sentence thereafter

imposed.3

We likewise think it clear that the lack of reference to

supervised release in the written judgment was due to

clerical error. Defendant contends that, far from being

inadvertent, this change reflected a purposeful decision on

the court's part--i.e., that the court decided, after

reexamining the issue during the intervening seventeen days,

to return to its initial inclination that supervised release

was unwarranted. Yet the court provided no indication of

having done any such thing. It would be unusual, to say the

least, for a court to revise a sentence sua sponte, without

notice or explanation. Moreover, defendant's two-pronged

attempt to buttress his speculation in this regard is wide of

the mark.

First, defendant notes that Judge McNaught imposed no

term of supervised release when later sentencing a

codefendant named Shlomo Levy. This fact, however, is of no

relevance. Unlike defendant, Levy was sentenced for

3. Judge McNaught orally pronounced sentence as follows:

Efriam Natanel, as to Count 18 of the indictment
..., the court hereby orders that you be imprisoned
for a period of six years, plus a four-year period
of supervised release upon your release from
incarceration. The court further imposes a fine in
the amount of $20,000 plus a special assessment of
$50.

Sent. Tr. at 20.

-4-

conspiring in 1985 to commit a drug offense, in violation of

21 U.S.C. 846. And it has been clear since 1980 that the

applicable version of 846 did not contemplate any type of

post-confinement monitoring (either supervised release or

special parole). See, e.g., Bifulco v. United States, 447

U.S. 381 (1980).4

Second, defendant points to the muddled state of the law

in September 1989 to infer that Judge McNaught likely changed

his mind. He concedes that subsequent caselaw has vindicated

the government's position that supervised release was

mandatory.5 See, e.g., Gozlon-Peretz v. United States, 498

U.S. 395 (1991); United States v. Morris, 977 F.2d 677, 686

(1st Cir. 1992), cert. denied, 113 S. Ct. 1588 (1993); United

States v. Ocasio Figueroa, 898 F.2d 825, 827-28 (1st Cir.

1990), cert. denied, 113 S. Ct. 1001 (1993). He suggests,

however, that the prevailing view at the time of sentencing

was to the contrary--and that Judge McNaught likely revised

the judgment to comport with that view. We agree that the

various amendments to 21 U.S.C. 841(b) were not a model of

clarity. In particular, we agree that, at the time of

4. In an amendment not affecting Levy's case, Congress
revised 846 in November 1988 to permit the imposition of
supervised release.

5. Although the propriety of supervised release is thus not
in dispute, the question of whether Judge McNaught intended

to impose such a sanction remains relevant to the various
procedural arguments advanced by defendant--such as whether
the government properly proceeded by way of Rule 36.

-5-

sentencing, it was unsettled whether that aspect of the 1986

amendments requiring the imposition of supervised release was

to take effect on October 27, 1986 or November 1, 1987. See,

e.g., United States v. Ferryman, 897 F.2d 584, 586-88 (1st

Cir.) (recounting statutory changes), cert. denied, 498 U.S.

830 (1990). Yet this circumstance avails defendant little.

We explain briefly.

The indictment here charged defendant with distributing

in excess of 500 grams of cocaine. If the amount involved

was less than one kilogram, defendant's argument in this

regard would fail entirely. Prior to the 1986 amendments,

such an offense was subject to a mandatory special parole

term. See 21 U.S.C. 841(b)(1)(B) (Supp. 1985).

Consequently, the choice faced by Judge McNaught would have

been between special parole and supervised release--not

between the latter sanction and no post-confinement

monitoring at all.

Yet the evidence at trial showed, see Natanel, 938 F.2d

at 312-13, and the government at sentencing argued, that one

kilogram of cocaine was involved. This muddies the water

slightly, for such an offense was not subject to special

parole under preexisting law. Id. 841(b)(1)(A); see, e.g.,

United States v. Santamaria, 788 F.2d 824, 829 (1st Cir.

-6-

1986).6 Yet defendant's argument remains unconvincing.

Contrary to his suggestion, it was not the predominant view

in September 1989 that any such offense occurring in the

"hiatus period" was exempt from post-confinement monitoring.

Only a few circuit courts had addressed the issue by that

time with specific reference to an offense that fell within

the purview of former subsection (b)(1)(A) and thus was

exempt from special parole. Their conclusions differed.

Compare United States v. Torres, 880 F.2d 113, 114-15 (9th

Cir. 1989) (per curiam) (supervised release applicable),

cert. denied, 493 U.S. 1060 (1990) with United States v.

Levario, 877 F.2d 1483, 1487-89 (10th Cir. 1989) (contra).7

The lower courts in this circuit were likewise divided.

Compare United States v. Chica, 707 F. Supp. 84, 85-86

(D.R.I. 1989) with Hernandez Rivera v. United States, 719 F.

6. We are puzzled by the government's concession, see Brief

at 6 n.5, that the supervised release period here could have
been invalidated between the time of our Ferryman decision in

February 1990 and the Supreme Court's decision in Gozlon-

Peretz one year later. In Ferryman, where we held that

special parole remained applicable to the "hiatus period"
offenses, we expressly withheld any view as to those offenses
subject to former (b)(1)(A). See 897 F.2d at 589 n.4. One

month later, we ruled that such offenses in fact were subject
to supervised release. See Ocasio Figueroa, 898 F.2d at 827-

28.

7. As noted in United States v. Gozlon-Peretz, 894 F.2d

1402, 1404-05 (3d Cir. 1990), aff'd, 498 U.S. 395 (1991), a

number of other cases that found supervised release
inapplicable involved offenses apparently within former
subsections (b)(1)(B) & (C), such that special parole
remained available.

-7-

Supp. 65, 66 (D.P.R. 1989). This mottled milieu obviously

would not have persuaded Judge McNaught to revise the

judgment sub silentio. We conclude that an inadvertent

omission, rather than a deliberate deletion, occurred here.

II.

Given this conclusion, defendant's remaining arguments

can be readily dispatched. It is clear that correcting the

written judgment was appropriate here. Where an unambiguous

oral sentence pronounced by the court conflicts with the

written judgment, the former controls. See, e.g., United

States v. Sasser, 974 F.2d 1544, 1561-62 (10th Cir. 1992)

(collecting cases), cert. denied, 113 S. Ct. 1063 (1993). In

addition, Rule 36--not former Rule 35(a), as defendant

argues--provides the proper vehicle for correcting such a

clerical error.8 See, e.g., United States v. Corey,

F.2d , No. 92-1223 (10th Cir. 1993) (Rule 36 correction

appropriate where judgment should have imposed three, rather

than five, years of supervised release); United States v.

Strozier, 940 F.2d 985, 987 n.2 (6th Cir. 1991) (same where

judgment omitted term of supervised release).

It was also unnecessary that defendant be physically

present at the time the judgment was corrected. See, e.g.,

8. Rule 36 reads: "Clerical mistakes in judgments, orders or
other parts of the record and errors in the record arising
from oversight or omission may be corrected by the court at
any time and after such notice, if any, as the court enters."

-8-

Corey, supra, slip op. at 5 ("court may correct the error ...

sua sponte"); see also United States v. De Los Santos-

Himitola, 924 F.2d 380, 382-83 (1st Cir. 1991) (defendant's

presence not required where sentence amended under former

Rule 35(a) to conform to originally imposed sentence). In

fact, the language of Rule 36 leaves it to the court's

discretion whether even to provide notice to the parties that

a clerical error is being corrected. Although having a

defendant present when a judgment is corrected has been

described as the "better practice," 3A C. Wright, Federal

Practice and Procedure: Criminal 2d 722, at 16 (1982 & '93

Supp.), our analysis in De Los Santos-Himitola confirms it is

not a compulsory practice. Since the corrective order here

did not enhance defendant's sentence but simply revised the

judgment to reflect the sentence as originally imposed,

defendant's presence was unnecessary.9

Nor is relief precluded by the fact that the motion was

filed over three years after entry of judgment (and some four

months, according to defendant, before his scheduled release

from prison). Rule 36 permits the correction of a clerical

error "at any time." While the government has not explained

its failure to act earlier, courts have granted Rule 36

relief after even lengthier delays. See, e.g., United States

9. United States v. Cook, 890 F.2d 672, 675 (4th Cir. 1989),

upon which defendant relies, did not involve a clerical error
subject to correction under Rule 36 and is thus inapposite.

-9-

v. Marquez, 506 F.2d 620, 621 (2d Cir. 1974) (five years).

Defendant contends that relief should nonetheless be barred

because the government purposefully delayed acting until

after Judge McNaught's retirement. In support, he argues

that our opinion on direct appeal alerted the government to

the fact that the judgment contained no mention of supervised

release. To the contrary, we there made no reference to the

issue.10 And no other evidence of deliberate delay has

been adduced.

Finally, defendant argues in a similar vein that

correction of the judgment at this late date so trenches on

his settled expectations as to violate due process. Reliance

is placed on Breest v. Helgemoe, 579 F.2d 95 (1st Cir.),

cert. denied, 439 U.S. 933 (1978), in which we noted that the

power of a court to correct a sentence to comport with

statutory requirements might be subject to some temporal

limit.11 Yet it cannot be said that defendant here had any

10. Defendant apparently deems significant our statement
that he "was subsequently sentenced to six years in prison
and fined $20,000." 938 F.2d at 306. Yet his appeal
involved no challenge to any aspect of his sentence. The
fact that we did not mention his supervised release term (or
his $50 special assessment) is thus understandable.

11. We stated:

After a substantial period of time,... it might be
fundamentally unfair, and thus violative of due
process, for a court to alter even an illegal
sentence in a way which frustrates a prisoner's
expectations by postponing his parole eligibility
or release date far beyond that originally set.

-10-

reasonable expectation that he was exempt from supervised

release. The fact that Judge McNaught unambiguously imposed

such sanction, the fact that our Ocasio Figueroa decision six

months later confirmed the propriety of doing so, and the

fact that such a sanction is statutorily mandated all

militate against such a conclusion. Moreover, the corrected

judgment here did not postpone defendant's release date, but

simply confirmed the fact that he would be subject to

supervision following his release. The Breest dicta is

therefore inapposite.

Affirmed.

579 F.2d at 101.

-11-