USCA1 Opinion

 

 September 24, 1993 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1364 UNITED STATES, Appellee, v. EFRIAM NATANEL, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Selya and Boudin, Circuit Judges. ______________ ____________________ Efriam Natanel on brief pro se. ______________ A. John Pappalardo, United States Attorney, and Jonathan Chiel, ___________________ _______________ Assistant United States Attorney, on brief for appellee. ____________________ ____________________ Per Curiam. Defendant Efriam Natanel appeals from the __________ grant of a motion under Fed. R. Crim. P. 36 to correct a clerical mistake in the judgment. The district court amended the judgment to include a four-year period of supervised release that, according to the government, had been verbally imposed by the sentencing judge but inadvertently omitted from the written judgment. Defendant argues that it was not, in fact, the judge's intention to impose such a sanction. He also contends that various procedural irregularities rendered the court's action here otherwise improper. We find each of these arguments without merit and therefore affirm. On June 1, 1989, defendant was convicted by a jury of distributing more than 500 grams of cocaine to another individual, in violation of 21 U.S.C. 841(a)(1), 841(b)(1)(B)(ii)(II). See United States v. Natanel, 938 F.2d ___ _____________ _______ 302 (1st Cir. 1991) (affirming conviction on direct appeal), cert. denied, 112 S. Ct. 986 (1992).1 The offense occurred ____________ in May 1987. At sentencing on September 15, 1989, Judge McNaught imposed a six-year prison term, a $20,000 fine, a $50 special assessment, and a four-year term of supervised release. Yet the written judgment, dated October 2, 1989, contained no reference to the period of supervised release. In November 1992, the government filed the instant motion to correct the judgment. Judge McNaught having retired in the interim, another district court judge received and summarily granted the motion without calling for a response from ____________________ 1. Our reference there to the conviction having occurred in 1990, see 938 F.2d at 308-09, is in error. ___ defendant; the judgment was accordingly amended to reflect the term of supervised release. Defendant submitted an opposition, which arrived after the court's order, and then a motion for reconsideration, which was summarily denied. This appeal followed. I. It is clear that Judge McNaught intended to impose, and did impose, a term of supervised release at sentencing-- despite an initial pronouncement to the contrary. The confusion appears to have stemmed from the fact that the government, when first recommending a sentence, failed to mention this sanction.2 See Sent. Tr. at 2. The court, ___ stating that it would "not go beyond the recommendations of the prosecutor," therefore announced that "there will not be a period of supervised release." Id. at 18. The government ___ immediately revised its recommendation and argued that supervised release was mandatory under 21 U.S.C. 841(b)(1)(B). The court, acknowledging a lack of familiarity with such requirement, eventually accepted this view after consulting the statute and explicitly included a four-year ____________________ 2. We note that defendant's attorney did recognize that a period of supervised release would be "appropriate." Sent. Tr. at 6. -3- term of supervised release in the sentence thereafter imposed.3 We likewise think it clear that the lack of reference to supervised release in the written judgment was due to clerical error. Defendant contends that, far from being inadvertent, this change reflected a purposeful decision on the court's part--i.e., that the court decided, after reexamining the issue during the intervening seventeen days, to return to its initial inclination that supervised release was unwarranted. Yet the court provided no indication of having done any such thing. It would be unusual, to say the least, for a court to revise a sentence sua sponte, without ___________ notice or explanation. Moreover, defendant's two-pronged attempt to buttress his speculation in this regard is wide of the mark. First, defendant notes that Judge McNaught imposed no term of supervised release when later sentencing a codefendant named Shlomo Levy. This fact, however, is of no relevance. Unlike defendant, Levy was sentenced for ____________________ 3. Judge McNaught orally pronounced sentence as follows: Efriam Natanel, as to Count 18 of the indictment ..., the court hereby orders that you be imprisoned for a period of six years, plus a four-year period of supervised release upon your release from incarceration. The court further imposes a fine in the amount of $20,000 plus a special assessment of $50. Sent. Tr. at 20. -4- conspiring in 1985 to commit a drug offense, in violation of __________ 21 U.S.C. 846. And it has been clear since 1980 that the applicable version of 846 did not contemplate any type of post-confinement monitoring (either supervised release or special parole). See, e.g., Bifulco v. United States, 447 ___ ____ _______ ______________ U.S. 381 (1980).4 Second, defendant points to the muddled state of the law in September 1989 to infer that Judge McNaught likely changed his mind. He concedes that subsequent caselaw has vindicated the government's position that supervised release was mandatory.5 See, e.g., Gozlon-Peretz v. United States, 498 ___ ____ _____________ _____________ U.S. 395 (1991); United States v. Morris, 977 F.2d 677, 686 ______________ ______ (1st Cir. 1992), cert. denied, 113 S. Ct. 1588 (1993); United ____________ ______ States v. Ocasio Figueroa, 898 F.2d 825, 827-28 (1st Cir. ______ _______________ 1990), cert. denied, 113 S. Ct. 1001 (1993). He suggests, ____________ however, that the prevailing view at the time of sentencing was to the contrary--and that Judge McNaught likely revised the judgment to comport with that view. We agree that the various amendments to 21 U.S.C. 841(b) were not a model of clarity. In particular, we agree that, at the time of ____________________ 4. In an amendment not affecting Levy's case, Congress revised 846 in November 1988 to permit the imposition of supervised release. 5. Although the propriety of supervised release is thus not in dispute, the question of whether Judge McNaught intended ________ to impose such a sanction remains relevant to the various procedural arguments advanced by defendant--such as whether the government properly proceeded by way of Rule 36. -5- sentencing, it was unsettled whether that aspect of the 1986 amendments requiring the imposition of supervised release was to take effect on October 27, 1986 or November 1, 1987. See, ___ e.g., United States v. Ferryman, 897 F.2d 584, 586-88 (1st ____ _____________ ________ Cir.) (recounting statutory changes), cert. denied, 498 U.S. ____________ 830 (1990). Yet this circumstance avails defendant little. We explain briefly. The indictment here charged defendant with distributing in excess of 500 grams of cocaine. If the amount involved was less than one kilogram, defendant's argument in this regard would fail entirely. Prior to the 1986 amendments, such an offense was subject to a mandatory special parole term. See 21 U.S.C. 841(b)(1)(B) (Supp. 1985). ___ Consequently, the choice faced by Judge McNaught would have been between special parole and supervised release--not between the latter sanction and no post-confinement monitoring at all. Yet the evidence at trial showed, see Natanel, 938 F.2d ___ _______ at 312-13, and the government at sentencing argued, that one kilogram of cocaine was involved. This muddies the water slightly, for such an offense was not subject to special ___ parole under preexisting law. Id. 841(b)(1)(A); see, e.g., ___ ___ ____ United States v. Santamaria, 788 F.2d 824, 829 (1st Cir. ______________ __________ -6- 1986).6 Yet defendant's argument remains unconvincing. Contrary to his suggestion, it was not the predominant view in September 1989 that any such offense occurring in the "hiatus period" was exempt from post-confinement monitoring. Only a few circuit courts had addressed the issue by that time with specific reference to an offense that fell within the purview of former subsection (b)(1)(A) and thus was exempt from special parole. Their conclusions differed. Compare United States v. Torres, 880 F.2d 113, 114-15 (9th _______ ______________ ______ Cir. 1989) (per curiam) (supervised release applicable), cert. denied, 493 U.S. 1060 (1990) with United States v. _____________ ____ ______________ Levario, 877 F.2d 1483, 1487-89 (10th Cir. 1989) (contra).7 _______ The lower courts in this circuit were likewise divided. Compare United States v. Chica, 707 F. Supp. 84, 85-86 _______ ______________ _____ (D.R.I. 1989) with Hernandez Rivera v. United States, 719 F. ____ ________________ _____________ ____________________ 6. We are puzzled by the government's concession, see Brief ___ at 6 n.5, that the supervised release period here could have been invalidated between the time of our Ferryman decision in ________ February 1990 and the Supreme Court's decision in Gozlon- _______ Peretz one year later. In Ferryman, where we held that ______ ________ special parole remained applicable to the "hiatus period" offenses, we expressly withheld any view as to those offenses subject to former (b)(1)(A). See 897 F.2d at 589 n.4. One ___ month later, we ruled that such offenses in fact were subject to supervised release. See Ocasio Figueroa, 898 F.2d at 827- ___ _______________ 28. 7. As noted in United States v. Gozlon-Peretz, 894 F.2d ______________ _____________ 1402, 1404-05 (3d Cir. 1990), aff'd, 498 U.S. 395 (1991), a _____ number of other cases that found supervised release inapplicable involved offenses apparently within former subsections (b)(1)(B) & (C), such that special parole remained available. -7- Supp. 65, 66 (D.P.R. 1989). This mottled milieu obviously would not have persuaded Judge McNaught to revise the judgment sub silentio. We conclude that an inadvertent _____________ omission, rather than a deliberate deletion, occurred here. II. Given this conclusion, defendant's remaining arguments can be readily dispatched. It is clear that correcting the written judgment was appropriate here. Where an unambiguous oral sentence pronounced by the court conflicts with the written judgment, the former controls. See, e.g., United ___ ____ ______ States v. Sasser, 974 F.2d 1544, 1561-62 (10th Cir. 1992) ______ ______ (collecting cases), cert. denied, 113 S. Ct. 1063 (1993). In ____________ addition, Rule 36--not former Rule 35(a), as defendant argues--provides the proper vehicle for correcting such a clerical error.8 See, e.g., United States v. Corey, ___ ___ ____ ______________ _____ F.2d ___, No. 92-1223 (10th Cir. 1993) (Rule 36 correction appropriate where judgment should have imposed three, rather than five, years of supervised release); United States v. ______________ Strozier, 940 F.2d 985, 987 n.2 (6th Cir. 1991) (same where ________ judgment omitted term of supervised release). It was also unnecessary that defendant be physically present at the time the judgment was corrected. See, e.g., ___ ____ ____________________ 8. Rule 36 reads: "Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court enters." -8- Corey, supra, slip op. at 5 ("court may correct the error ... _____ _____ sua sponte"); see also United States v. De Los Santos- ________ ______________ _______________ Himitola, 924 F.2d 380, 382-83 (1st Cir. 1991) (defendant's ________ presence not required where sentence amended under former Rule 35(a) to conform to originally imposed sentence). In fact, the language of Rule 36 leaves it to the court's discretion whether even to provide notice to the parties that a clerical error is being corrected. Although having a defendant present when a judgment is corrected has been described as the "better practice," 3A C. Wright, Federal _______ Practice and Procedure: Criminal 2d 722, at 16 (1982 & '93 ___________________________________ Supp.), our analysis in De Los Santos-Himitola confirms it is ______________________ not a compulsory practice. Since the corrective order here did not enhance defendant's sentence but simply revised the judgment to reflect the sentence as originally imposed, defendant's presence was unnecessary.9 Nor is relief precluded by the fact that the motion was filed over three years after entry of judgment (and some four months, according to defendant, before his scheduled release from prison). Rule 36 permits the correction of a clerical error "at any time." While the government has not explained its failure to act earlier, courts have granted Rule 36 relief after even lengthier delays. See, e.g., United States ___ ____ _____________ ____________________ 9. United States v. Cook, 890 F.2d 672, 675 (4th Cir. 1989), _____________ ____ upon which defendant relies, did not involve a clerical error subject to correction under Rule 36 and is thus inapposite. -9- v. Marquez, 506 F.2d 620, 621 (2d Cir. 1974) (five years). _______ Defendant contends that relief should nonetheless be barred because the government purposefully delayed acting until after Judge McNaught's retirement. In support, he argues that our opinion on direct appeal alerted the government to the fact that the judgment contained no mention of supervised release. To the contrary, we there made no reference to the issue.10 And no other evidence of deliberate delay has been adduced. Finally, defendant argues in a similar vein that correction of the judgment at this late date so trenches on his settled expectations as to violate due process. Reliance is placed on Breest v. Helgemoe, 579 F.2d 95 (1st Cir.), ______ ________ cert. denied, 439 U.S. 933 (1978), in which we noted that the ____________ power of a court to correct a sentence to comport with statutory requirements might be subject to some temporal limit.11 Yet it cannot be said that defendant here had any ____________________ 10. Defendant apparently deems significant our statement that he "was subsequently sentenced to six years in prison and fined $20,000." 938 F.2d at 306. Yet his appeal involved no challenge to any aspect of his sentence. The fact that we did not mention his supervised release term (or his $50 special assessment) is thus understandable. 11. We stated: After a substantial period of time,... it might be fundamentally unfair, and thus violative of due process, for a court to alter even an illegal sentence in a way which frustrates a prisoner's expectations by postponing his parole eligibility or release date far beyond that originally set. -10- reasonable expectation that he was exempt from supervised release. The fact that Judge McNaught unambiguously imposed such sanction, the fact that our Ocasio Figueroa decision six _______________ months later confirmed the propriety of doing so, and the fact that such a sanction is statutorily mandated all militate against such a conclusion. Moreover, the corrected judgment here did not postpone defendant's release date, but simply confirmed the fact that he would be subject to supervision following his release. The Breest dicta is _________ ______ therefore inapposite. Affirmed. _________ ____________________ 579 F.2d at 101. -11-